**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
DESIREE ROSARIO, individually, and on behalf of all other similarly situated consumers,

Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES, LLC.; LOANCARE LLC,

Defendants.
---------------------------------------------------------------X

Index No.: 3:26-cv-00356

**FIRST AMENDED COMPLAINT**

Plaintiff Desiree Rosario hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages arising from Defendants violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

**JURISDICTION AND VENUE**

2. Defendant removed this action.

**PARTIES**

3. Plaintiff is a natural person who at all relevant times has resided in Endicott, New York.

4. Defendant, Equifax Information Services, LLC ("Equifax"), is a business entity that regularly conducts business in New York with its principal place of business as 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(F) and is engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

5. Defendant, Loancare LLC ("Loancare" or "Defendant"), is a business entity that offers mortgage lending, refinancing, calculations, foreclosure, and other financial services. LoanCare regularly conducts business within New York with its principal place of business located in 3637 Sentara Way, Virginia Beach, VA 23452. LoanCare regularly and in the ordinary course of business furnishes information to various consumer reporting agencies regarding LoanCare's transactions with consumers and is therefore a "furnisher" of information as contemplated by the FCRA. 15 U.S.C. §§ 1681s-2(a) & (b).

## FACTUAL STATEMENT

6. On a date better known by Loancare, Plaintiff incurred a mortgage obligation bearing account *6708.

7. On or about June 2020, the loan was paid off in full.

8. Thereafter, the account was reported as closed to Equifax by Loancare.

9. Because the account was closed, and paid, Equifax knew that the credit report could not report late after this date.

10. Despite this fact, Loancare began reporting Plaintiff as thirty days late to Equifax for the months of September, October, November and December of 2020. Upon information and belief, said inaccurate lates began to be reported sometime in 2023, unbeknownst to Plaintiff.

11. Said reporting was patently inaccurate and clearly misleading.

12. Upon information and belief, Equifax has an internal policy that is able to recognize a contradiction between a closed account and a late reporting thereafter. Despite having this ability, Equifax did not implement this policy to prevent contradictory and inaccurate reporting.

13. In the alternative, Equifax does not have such a policy. Nonetheless, Equifax has knowledge that maintaining such a policy will ensure greater accuracy. Despite this knowledge, at all relevant times, Equifax failed to maintain such a policy.

14. Because Equifax was able to determine the internal contradiction, Equifax was able to deduce that LoanCare was providing it with factually false information. At that point, Equifax should have questioned its reliance on treating LoanCare as a reliable data furnisher. However, Equifax has no policy or procedure that links Equifax's knowledge that a furnisher is providing it with false information to a requirement that a given furnisher should be checked for reliability.

15. On or about January 2024, Plaintiff was denied credit with PenFed Credit Union.

16. Upon information and belief, PenFed denied Plaintiff's credit application as a result of Equifax's false reporting of the LoanCare account—believing Plaintiff had made repeatedly delinquent on her mortgage obligation. At the time of said application, Plaintiff did not know that Equifax was reporting said false information.

17. Plaintiff disputed the incorrect information with Equifax on or about March 2024, on several occasions.

18. Upon information and belief, Equifax received Plaintiff's dispute and forwarded it onto Loancare.

19. Upon information and belief, Loancare failed to conduct a reasonable investigation and verified to Equifax that the account should continue reporting as late after the payoff despite knowing the account should be reported as closed without subsequent lates.

20. Equifax also failed to conduct a reasonable investigation and verified Plaintiff as late.

21. Both Equifax and Loancare had specific knowledge of the fact that the reporting could not be accurate. But neither Defendant took any steps to remedy the error.

22. After Plaintiff's March 2024 dispute, Plaintiff continued to apply for credit.

23. Plaintiff applied for an auto loan in late 2024. During the course of the application, the lender pulled Plaintiff's Equifax credit report. Upon information and belief, as a result of Equifax's reporting error, Plaintiff's credit score was improperly depressed and her creditworthiness made her appear as delinquent on her mortgage loan. This resulted in Plaintiff receiving the loan on less favorable terms.

## CLASS ACTION ALLEGATIONS

### The Class

24. Plaintiff brings this as a class action. Plaintiff seeks to represent a class for purposes of liability and statutory damages only. Plaintiff does not seek actual damages for the classes.

25. Plaintiff seeks certification of the following classes, initially defined as follows:

> Class A: All natural persons residing within the United States, beginning five years prior to the filing of this Complaint, for whom Equifax credit reported late payment history after the account had already been closed.
>
> Class B: All natural persons residing within the United States, whose Equifax credit reports reported late payment history after the account had already been closed, for whom Equifax received a dispute, and for whom Equifax continued to report, after reinvestigation of said dispute, late payment history after the account had already been closed.
>
> Class C: All natural persons residing within the United States, whose Equifax credit reports reported late payment history after the account had already been closed, for whom Equifax received a dispute and forwarded on to Loancare, and for whom Loancare verified the late payments.

### Numerosity

26. Upon information and belief, Equifax credit reports contain inaccurate late payment information for hundreds, if not thousands, of consumers throughout the United States, each of which violates the FCRA. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

27. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from the records of Equifax. This class is particularly ascertainable given the fact that the nature of the claim is obvious on the face of any credit report.

**Common Questions of Law and Fact**

28. There are questions of law and fact common to the class that predominates over any questions affecting only individual Class members. These common questions of law and fact include, without limitation: (i) whether Equifax or Loancare violated various provisions of the FCRA; (ii) whether the Plaintiff and the Classes have been injured by the conduct of Defendants; (iii) whether the Plaintiff and the Classes have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and (iv) whether the Plaintiff and the Classes are entitled to declaratory and/or injunctive relief.

**Typicality**

29. The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Classes defined in this complaint have claims arising out of the common uniform course of conduct complained of herein: Plaintiff and each member of the class have obviously inaccurate late payments on their credit files. Accordingly, Plaintiff's claims are typical of the claims of the Classes, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Classes.

**Protecting the Interests of the Class Members**

30. Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

31. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

**Proceeding Via Class Action is Superior and Advisable**

32. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.

33. The members of the Classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

34. Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

35. Certification of a class is appropriate in that the questions of law and fact common to members of the Plaintiff's Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

36. Certification of a class is appropriate in that prosecuting separate actions against any of the named Defendants concerning their failure to maintain adequate policies to comply with the FCRA could result in inconsistent or varying adjudications with respect to individual class members, and would result in adjudications that would impair or impede their ability to protect their interests.

37. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues.

38. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

39. Absent a class action, the members of the Classes will continue to suffer losses borne from Equifax's breaches of Class members' statutorily protected rights as well as monetary damages, thus allowing and enabling Equifax's conduct to proceed and harm consumers.

40. Equifax has acted, and will act, on grounds generally applicable to the Classes, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY EQUIFAX

41. Plaintiff repeats, realleges, and reasserts the allegations contained in the paragraphs above and incorporates them as if specifically set forth at length herein.

42. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

43. Equifax negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).

44. Equifax negligently and willfully failed to reinvestigate Plaintiff's disputes in violation of 15 U.S.C. § 1681i.

45. As a direct and proximate cause of Equifax's failure to perform its duties under the FCRA, Plaintiff has suffered injury to credit worthiness and increased difficulty obtaining credit. Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on credit report and credit worthiness.

46. Equifax's conduct, action and inaction was willful, rendering each liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT II
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 380
## BY EQUIFAX

47. Plaintiff repeats, realleges, and reasserts the allegations contained in the paragraphs above and incorporates them as if specifically set forth at length herein.

48. Pursuant to N.Y. Gen. Bus. Law. § 380-l and § 380-m, Defendant is liable for failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it sold about consumers, in violation of NYGBL § 380-j(e).

49. Pursuant to N.Y. Gen. Bus. Law. § 380-l and § 380-m, Defendant is liable for failing to re-investigate the erroneous information and provide a notice of dispute, in violation of NYGBL § 380-f(a)-(c).

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY LOANCARE

50. Plaintiff repeats, realleges, and reasserts the allegations contained in the paragraphs above and incorporates them as if specifically set forth at length herein.

51. At all times pertinent hereto, Loancare was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

52. Loancare willfully and negligently supplied Equifax with information about Plaintiff that was false, misleading, and inaccurate.

53. After being informed of these errors, Loancare negligently and willfully failed to conduct a reasonable investigation, in violation of 15 U.S.C. § 1681s-2(b).

54. Specifically, by allowing inaccurate historical late payments to report years after knowing the account had been paid, Loancare failed to fix the errors after being notified of the reporting error.

55. As a direct and proximate cause of Loancare's failure to perform its duties under the FCRA, Plaintiff has suffered injury to credit worthiness and increased difficulty obtaining credit. Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on credit report and credit worthiness.

56. Loancare's conduct, action and inaction was willful, rendering it liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Loancare was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## JURY TRIAL DEMAND

57. Plaintiff demands a jury trial on all issues so triable.

WHEREFORE, Plaintiff, Desiree Rosario, respectfully requests that this Court do the following for the benefit of Plaintiff:

A. Certify the class described herein and appoint Plaintiff as Lead Plaintiff, and Plaintiff's Counsel as Lead Counsel;
B. Enter judgment against Defendants for punitive damages;
C. Enter judgement against Defendants for statutory damages;
D. Enter judgment against Defendants for actual damages;
E. Enter an order for injunctive relief prohibiting Defendants from continuing to report credit errors;
F. Award costs and reasonable attorneys' fees;
G. Grant such other and further relief as may be just and proper.

Dated this 1st day of May, 2026.

Respectfully Submitted,

/s/Daniel Zemel
Daniel Zemel
ZEMEL LAW, LLC
660 Broadway
Paterson, New Jersey 07514
T: (862) 227-3106
F: (973) 282-8603
Dz@zemellawllc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May 2026 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

/s/ Daniel Zemel
Daniel Zemel, Esq.